May it please the Court, Catherine Clark on behalf of plaintiffs, this is business litigation between two American companies that undertook to sell motorbikes manufactured by a Chinese entity. The litigation began in 2005 and proceeded for two and a half years plus before one of the defendants, Zongshen of China, told the Court it did not exist. Despite their knowledge that the plaintiffs had renamed and reserved them, the Chinese entities did not appear and defend until they moved to set aside the defaults because of plaintiffs' efforts to execute on them. I'm going to start, then, by discussing the trial court's order. Let me ask you, what happened to the – were these motorcycles? I'm sorry, I did not hear. Were we – are we dealing with motorcycles or – Motorbikes, yes. A motorbike is a motorcycle. I assume so. I've just had – I've stayed away from those things. Me, too. Okay, but – okay, it's a motorcycle, I guess. Right. And what happened to those two big loads of motorcycles? I believe there were three of them and they were not of merchantable quality. Some of them did not have the necessary EPA stickers that the manufacturer is supposed to put on, the seller is not supposed to put them on. There were multiple problems that led to litigation. Well, I know. But what happened to them? I'm sorry, what? Are they still around? Are the bikes still around? Yes. I have – no. Were any of them sold? It's kind of – we don't really – we're kind of operating in a vacuum. So you're telling us what the fraud was? You're telling us that these were not merchantable? Yes. That was the complaint in the original action in 2005. What happened to them? Were they junked? Were they tossed into the ocean? What happened to them? Your Honor, of all the questions I asked about the posture of this case, I did not ask that one. I asked the question as to what happened to the motorbikes. I don't know the answer to the question. The first hurdle is, was service value valid or not? Is that correct? Correct. The defaults that were taken – If service was valid, then you're on the short end of the stick, right? And if – excuse me – if service was valid, back it goes, right? Yes. That is correct. If service was invalid, then you're on the short end of the stick. The defaults were set aside – in the three actions – the defaults were set aside because of insufficient service. That was the basis for the court's ruling. That's absolutely correct. And in one case, because of lack of jurisdiction, I believe, too. But that kind of comes down the line. The first question here is setting aside the defaults because of an alleged insufficiency of service. And it's necessary to understand, therefore, a little bit about the background. The plaintiff had sued an entity that plaintiffs believed was the right one, Zhongshan of China. This is a name that the entities have used. It's in their – it's in letterheads. It's Zhongshan of China. And they sued and served them, and they appeared and litigated for two and a half years before announcing that there was no such entity as named. They also contested adequacy of service. The court granted a summary judgment, ordered plaintiff to get the right defendants and serve them. That was done. And then they failed to appear. Zhongshan, Inc. of a Florida corporation, settled for a portion of the plaintiff's damages. That left the Chinese entities. The court gave a very clear warning that because they had been served, he would default them if they did not appear. And this was after the attorney involved, after that complaint had been filed, the amended complaint, adding the new entities, after the defendants had appeared via Mr. Fisher, the previous defendant, with a motion to strike because instead of substituting one new entity, they'd substituted three. And that caused some problem for the court that's reflected, just a moment, it's reflected in an order that appears at ER 337, 338, yes, 338 in our excerpt of record, where he points out that in response to the first amended complaint, defendants, defense counsel filed defendant's motion to strike and begins to ask the question, who was the attorney representing after all? It turned out eventually that he took the position he was only representing Zhongshan, Inc., the Florida corporation, had never represented a Chinese entity, even though he had purported to represent a Chinese entity. Now the service that occurred at that time was service on the registered agent for Zhongshan, Inc., who was the American face of the Chinese entities, created to market motorbikes in the United States, created to deal with the EPA and all the requirements that they had. So it was served on Zhongshan, Inc., and it was served on the attorney who had represented Zhongshan of China. And it's Plaintiff's position that when you look at the Oregon rule, that was sufficient, that was adequate service, because it was reasonably calculated to give notice of the existence and pendency of the action and an opportunity to appear and defend. In fact, a Chinese attorney spoke on the phone with Plaintiff's counsel. There were settlement negotiations pending with Zhongshan, Inc., and eventually that occurred. And he was told directly that the court was going to default if they did not appear. But they took the position that they did not have to appear and defend. The service was inadequate. There was no jurisdiction or whatever, but they did not have to appear and defend. And the court defaulted them for that reason. I want to point out that under Oregon law, the primary service methods that are articulated are not exclusive. Absolute compliance is not necessary. The court in Oregon has endorsed the process of examining the totality of the circumstances, and they expressed the rule in Baker v. Hoy, which we've cited to the court, as follows. Had Plaintiff given instructions to use the method by which service was actually made, would that comply? So it's prospective, but retrospective, too. And it's in the totality of the circumstances. Service on Zhongshan, Inc. had already resulted in somebody purporting to appear for the Chinese entity that Plaintiff thought they'd sued and litigate for two and a half years and provide thousands of pages of documents over a period of time. You don't care a fig for the Hague Convention, do you? We don't think it's necessary to go to the Hague Convention to serve a foreign corporation. So you don't care about it. Your major argument is Oregon law, the heck with the Hague Convention. We have completed valid service under ORCP 7 and had valid service in every single one of these actions. I'm going to point out also that in the second Zhongshan case, the second, Rubicon 2 is what we called it. That was the one that, after they discovered the problem with the fraudulent representations to the EPA that these motorbikes had been tested by an entity that had not tested them, the addition of RICO and or RICO claims. And that was done in July, I think, just a moment, I'll have to check my dates here, I don't want to misrepresent. Actually, it was, yes, filed in July of 2009, right after the default order had been taken in Rubicon 1. And again, service was made this time not just on Zhongshan Inc., but also on the officers of the corporations. And that is also a valid service method under Oregon law, that you serve the officer or director of a corporation by personal or substituted service. And every one of those corporations, all three of those, actually there were only two, three names, two actual entities, one had two names. Officers of both those corporations were served by personal or substituted service in Rubicon 2. And that too is valid. The court was distressed because the summons only made reference to the individual officer, but not to their representative capacity. But that's not a fatal problem. A defect in the summons is not fatal if actual notice was, if there was sufficient notice given by the, by the attached complaint. And there was, there was an attached complaint, the defendants are now saying that there was no attached complaint, but the summons makes reference to it, and that alleged defect was never even pointed out to the trial court. At a time when it could have been remedied by a supplemental affidavit of service as to the fact that the complaint to which reference is made was in fact attached. So we had service on Zhongshan Inc., their agent in this country, the face of the, of the Chinese entities for purposes of dealing in America.  We served the officers. We served in the first action, their attorney, who was representing somebody in China, or purported to be. Seems like everybody had a bit of the same DNA in this thing. It seems to me that all of them had a certain amount of the same DNA. Had a husband, wife, daughter, corporation, various names. These are closely held corporations. These are, this is a family operation. And so there was service on the family members that were located, who were also officers and directors, that were located in Florida. That's our position on the service, that it was wrong after all this time, when the defendants knew about the tendency of these actions, this action, for the court to relieve them of the default. The court then went one step further, and we're contending that that's also error. He dismissed Rubicon 1 for failure to diligently prosecute. Even if there was still a defect in service, and we don't think there was, we submit that that was the wrong thing to do. There had not been any lack of prosecution of this action until the defendants suddenly disappeared, or didn't appear. But Zhongshan of China disappeared, and nobody came to take their place. And then there was a problem with finding somebody to actually have an action against. And there was the Rubicon 2, and Rubicon 3, which was renaming one of the entities with a slightly different name, because Canada had problems with execution on the entity, because the name was somewhat different. So there was all these efforts made to try to track these corporations down for purposes of execution, and nothing happened until 13 months after the default was taken in Rubicon 1. And that was in 2010. And they came in and moved, set aside, their contention being that there was invalid service. But up until the time of the summary judgment motion and Zhongshan of China suddenly contending that they did not exist and could not be sued and had not been served properly, all of that, there was no lack of diligent prosecution. There was document discovery. There were depositions taken by them of the plaintiffs, I believe. There was talk of other depositions. And the problem was where to have these depositions occurring, and was it going to be in Hong Kong, and at the expense of it? So there were problems, but there was discovery going on until the summary judgment motion and until Zhongshan of China disappeared. So we submit that given the circumstances of this case, where the court found the defendant's own conduct evasive, culpable, and dilatory, that it was error to visit those consequences on the plaintiff by dismissal of the action, in which some Chinese entity had purportedly appeared before the court under circumstances where the defendant clearly knew that litigation was going on. I'm not going to talk directly about jurisdiction over two of those defendants. That's the third issue. Two of the defendants in the remaining cases were dismissed for lack of jurisdiction. Three of them, actually. We do not contend that the father was, that we had jurisdiction over him individually. What about Zhongshan USA? Zhongshan USA, the holdings, the holding company, yes, we contend we do have jurisdiction over them. That they were part of this whole conspiracy. That they were represented through their officers. These are, in some ways, it's a hide the peanut game. But they're all entities that are related by family and directed and operated by family and owned by each other or family members. And that's your position on Oregon law, since they are so closely related. You got tired of finding out where the peanut was hidden under the shell. Yes, and as to jurisdiction, there was also the fact that you can, in a RICO action, even if there was not direct jurisdiction in a fraud claim, for example, against USA Holdings, because they hadn't been sufficiently involved, there was under the RICO statute. Because we do have the ability where otherwise it's an appropriate forum to reach into, to bring somebody else in. What I want to talk about instead, briefly, in the time, my time remaining, and I have reserved some time for rebuttal, is the statute of limitations issue. You know, that's another problem with the dismissal of Rubicon 1. The dismissal for lack of prosecution left the plaintiff with fraud claims that had a statute of limitations issue that never existed before. But we submit that the statute of limitations was misinterpreted anyway. Under Oregon law, the statute does not begin to run until the plaintiff discovers the identity of the responsible party and perceives the role which they have played. And that discovery is critical. Not until 2008 did the plaintiff discover that they hadn't, plaintiffs, that they hadn't reached the right entity. And not until 2008 did they discover the basis for a RICO claim and a claim against the individual defendants because of the fraud on the Environmental Protection Agency. So there were discoveries that occurred late in the litigation, when all those documents had been produced and when they were analyzed by an expert that said, who happened to own the lab that Song Hsien said had tested the motorbikes, and who said, no, we didn't, we didn't test them, that that was fraudulent. It wasn't until that point that the basis for a RICO claim, that the basis for a RICO claim against the individuals had been discovered. So that it was wrong, even if everything else was okay, it was wrong to dismiss those entities based on a statute of limitations argument, given the history of this litigation, and given what plaintiffs discovered, and could not reasonably have discovered until 2008 when the documents were finally produced. It wasn't a very rapid, I might say, discovery process. And as the court had said, the court pointed out in the court below, defendants had been somewhat dilatory in their responses. But the fact is, plaintiff did not discover until that time the basis for those claims. And finally, the failure to state a claim under a RICO. The trial court relied on a conception's approximate cause that do not apply in Oregon. Under Oregon law, where the losses are the foreseeable, it's foreseeability, are the foreseeable consequence of the predicate act. They are recoverable. It's foreseeability that we're talking about. And we assert that it is foreseeable to a defendant who defrauds the EPA and says that their bikes have been tested when they have not. That plaintiffs are going to rely on the idea that they've been approved by the EPA when they enter into a business relationship to sell those motorcycles. So under Oregon law, it was wrong to say that the causal link between the predicate act and what happened to the plaintiffs was too attenuated, that it didn't meet the proximate cause standard. Under Oregon law, it was sufficient if they were foreseeable, and they certainly were foreseeable. If the Court has questions, I'd be happy to answer them. All right. I've reserved some time. Excuse me. Mr. Chen. Mr. Chen. May I please the Court? Bao-Lin Chen representing all defendants. Yes. Plaintiff counsel mentioned several issues so far. One is service issue. Second is statute of limitation. Third one is Oracle's causation standard. Whether forcibility is Oregon's Oracle statute causation standard. I want to talk about the second issue first, about when statute of limitation should start to run in all those four cases. Plaintiff's position is they discovered something in 2008 during the Rubicon I litigation. Therefore, this statute of limitation start to run, even for the fraud case, which they filed suit in 2005, should restart run in 2008, July or something. However, this is against what they knew in a letter in March 2005. This is a letter written by Mr. Muhammad Rehman to Johnson, Inc. in Florida, and also to another man, Mr. Xie, X-I-E, who was general manager with Johnson, Inc. before. This is in ZSER 257. In this letter, Mr. Rehman mentioned clearly all their alleged problems here. The most serious part of these events is that EPA has informed us the EPA containers are possibly fraudulent and are no longer valid. And then it continues to say the EPA agent is currently conducting a thorough investigation of Johnson products and the scooters. So this letter proved plaintiff's view sometime in 2004. So the date of the letter? I'm sorry? What was the date on the letter? That's March 8th, 2005. And also, if you look at their first complaint filed on November 30th, 2005, they alleged defendants warranted and represented the following two, that the bags were certified in compliance with the federal EPA regulation. And later they say this is a fraud because defendants knew that were false. So what they really found in 2008 at most is a piece of evidence to prove their allegation in their complaint, yes, you got, you know, fraudulent misrepresentation. Actually, it's still disputed because they have one witness, Mr. Walker, I believe, said it's my lab. I did not do any tests for those motorcycles. But then there's a Mr. Johnson who charged a fee for doing the experiments and tens of thousands of dollars charged on Zhongshan, Inc. And there was checks we attached in our records showing Zhongshan, Inc. paid the service. And Mr. Johnson said, I did it. So we got contradictory witnesses. This record said, well, counsel go to do deposition, find out. One of them was telling a lie. And plaintiff counsel did not do deposition. As a matter of fact, plaintiff did not do any depositions from defendants, employees. So that's about statute of limitation. The reason I start with the statute of limitation is if it's true, according to their letter in March 2005, the new defendant's corporations, Mr. Rigby. Sotomayor, what does the applicable statute of limitations provide in terms of timing? For what? The statute of limitations, tell me, is it two years, three years? What is it? Well, for fraud claim, it's two years. For Federal and RICO, it's four years. So based on this standard, their Rubicon II, which was filed in July 2008, violated a statute of limitation. But Rubicon I did not. Rubicon I was not. That's true. But Rubicon I was only based on contract, warranty, and fraud. It was not based on RICO. So if this panel decides this record correctly decided a statute of limitation in Rubicon II, Rubicon III, this panel could simply ignore all counsel's argument about the service in Rubicon II. That way, we just focus on Rubicon I's service issue. Now, we agree with plaintiff counsel. The case in control is an Oregon Supreme Court case, Baker v. Foy. However, plaintiff failed to mention several things. One important notion is distinction between adequate notice and actual notice. You heard plaintiff counsel mention some facts that the Chinese attorneys in China knew there was a default, but that's related to actual notice. And Oregon Supreme Court in Baker case said actual notice did not cure defective attempted service. And I like the following quote. In Baker, the Oregon Supreme Court said, actual notice by itself does not necessarily constitute adequate notice. And adequate notice does not require actual notice. So most of plaintiff's arguments dealt with actual notices. They said that the Chinese attorney knew about the suit, but there was no evidence who delivered the summons and the complaint to Chinese attorney. So we go back to the adequate service issue. We agree with you. The standard is correct. We agree with plaintiff counsel. Reasonable calculation under totality of evidence. Focus on counsel's knowledge at the time of the service. That's correct. However, if you look at how do you decide totality of evidence? Actually, Baker case gives us a very good example. Baker case is a motor vehicle accident case. Plaintiff sued defendant's mother, who was the owner of the vehicle, and also sued defendant's son, who was the driver. And at the accident scene, the driver's son told plaintiff his address, which was his mother's address. So plaintiff counsel served defendant co-defendant mother personally at his home. Plaintiff also did substitute the service on defendant's son by leaving a copy of a complaint and summons to defendant mother. And there was actual notice evidence. The son later went to visit mother, saw the summons and the complaint. So there is no argument. There was direct evidence. There was actual notice. Now, Oregon Supreme Court does not find adequate service in this situation. Oregon Supreme Court did not explore the relationship between co-defendant mother and the co-defendant son. See, how often was the son visiting mother? How often did the son get mails from mother? Oregon Supreme Court said there was no authorization from the son for mother to take service. Therefore, that service was not adequate. Baker case actually cited another identical case by the name of Jordan B. Weiser. It's almost the same. Co-defendant mother got served in Oregon City. Co-defendant then moved out from Oregon to press court in Washington. Co-defendant mother called the son and says, you got served. Not only that, co-defendant mother drove 200 miles to visit her son and delivered summons and complaints. So actual service, for sure. In that case, which is also Oregon Supreme Court case, Oregon Supreme Court said there was no adequate service because no authorization to. Now, for plaintiff's theory to be successful, they have to find out one Oregon Supreme Court interpreting ORCP 7 basically saying a foreign corporation, for example, in a foreign state can be served by serving an Oregon subsidiary corporation. We don't have such a kind of case. Not only to mention their service is valid by serving a subsidiary in Florida to get two corporations in China. By the way, factually, there was only one Chinese corporation, its parent corporation of Zhongshan Inc. That is what we call ZS Group. That's parent corporation. So if defendant's theory works, it only works against ZS Group, not against the other corporation, ZS Import Export. Actually, this case, the service, the reason in Rubicon 1 in 2008, they continue to serve Florida subsidiary was they found a piece of document, a letter written by transportation department to Zhongshan Inc. To Zhongshan Import Export in China says, yes, you got a new agent in Florida for us to serve. And there are numerous case law cases saying that's only for transportation department only, not for other plaintiff cases. I want to talk about Rule 11 via sanction issue. In this case, in those cases, district court denied our motion for Rule 11 sanction. Just based on conclusory statement, district court did not engage any detailed analysis. We have several allegations. According to this court decision in Thompson, which Judge Fletcher, you wrote the opinion yourself, you said we must know what the district court reason is. If we don't know, we must remain. Secondly, you also wrote a single violation of Rule 11 in the otherwise legitimate complaint with subject counsel for sanction. In Thompson case, you also cited another case saying creating enormous damages, millions of dollars with the subject counsel to sanction. In order to understand why the counsel should be sanctioned, we have to understand the facts of the whole case that led to those litigations, like Judge Perkinson asking first what happened to those facts. So what happened in the whole events? We knew Rubicon Plaintiff was formed on April 19, 2004. Then in May 2004, Plaintiff's representative met Mr. Xie, X-I-E, a representative from Zhongshan Companies. In June, Mr. Mohammad Rahman went to China, talked to Mr. Zou. Mr. Rahman pitched to Mr. Zou, you are hardware guy, we are software guy. I'm a business professor. I did work for Pitney Bowes. I worked for Nike. What we are trying to do to help you is basically you don't seek cheap motorcycles. Let us do the brand like Apple, like Nike. That way it's more profitable. So this is not Zhongshan came to them to say sell our motorcycles. This is instead Rubicon went to China and says we want to do the brand building. Let's do joint venture. It was reflected in the positions. It was reflected in business plan written by Rubicon itself. And on August 2, 2004, the other plaintiff corporation, Z Motors, was set up. Then the parties, when I say parties, I mean Chinese corporation by the name of Zhongshan Import Export started to exchange memorandum with defendant. Zhongshan Import Export Defendant in China started to exchange memorandum with plaintiff Rubicon about the joint venture. Rubicon knew the partner they were dealing with was Zhongshan Import Export Corporation. That was in memorandum. So this goes back to the counsel's argument just before here said Zhongshan of China was on letterhead. It was not on letterhead. On letterhead it says Zhongshan Import Export. So plaintiff's counsel knew who were the joint venture partner in China. She put a wrong name in the first complaint. She also put a wrong name of their own client, by the way. So September, back a little bit in August, two containers arrived in U.S. Plaintiff put the motorcycles together and there were minor problems. They never sent any letters of complaint to the seller, Zhongshan Inc., or Z Motors. They did not say replace, repair. So then we have to also read their business plan. Their business plan says clearly Zhongshan in China was owning an OEM called Original Equipment Manufacturing. So they provide hardware. Business plan also said Zhongshan in China is owning preferred OEM. By the way, we are looking around and there are letters, e-mails, depositions, indicating plaintiffs were talking to other manufacturers in Asia to get OEM partners. So then in November 2004, that was a month, Z Motors got dealer's license. That was a month. They could only start to sell machines to the public, but then they closed it because no funds. Then we go back to the March 2005 letter asking Mr. Muhammad, asking Zhongshan Inc. in Florida, not to Zhongshan companies in China, but to Zhongshan Inc. in Florida, also asking Mr. Xie for compensation. And here it says on my ZSER 258, we are submitting costs for Zhongshan products to you as well as Mr. Xie, who we believe is partially responsible. If you read this request, he was only asking $150,000. And that was a markup of 50% of the price they paid for the motors. Now go back to other Rule 11 violations, huge damages, and also adding additional defendants, which was a problem this Court found in Tungshan. This sued two wrong defendants, at least. Your time is up, Your Honor. Okay. I can stop. Thank you. Well, if you want to close, I mean, do you have a closing statement? I reserve time to rebut. Thank you. Go ahead and do it now, then. You get no rebuttal time. I'm sorry? You get no rebuttal time. Oh, I don't have a rebuttal time? No. Okay. Can I talk? How many minutes do I have? Yeah, a few minutes. A few minutes? Okay.  One was a college student at that time in 2004 in Florida. And their allegation right now, even if in their appeal brief said, this young lady induced plaintiff to form Z Motors. Now, that was only alleged in Rubicon 4, which was filed in 2010 July. They made that allegation. However, if you read my reply brief, there were depositions that question were asked. Why got the two corporations? Why we have Rubicon? Why we have Z Motors? And plaintiff's representative, Mr. Reiman, said, that was solely at the advice of our legal counsel. But now they are alleging this college student induced them to set up this Z Motors. As a matter of fact, I don't know right now what their, if you read their corporate disclosure statement at the beginning. Counsel did not say those two corporations got parental subsidiary relationship. However, in one deposition, Mr. Muhammad Reiman said clearly, Rubicon was a holding corporation, controls Z Motors. Okay. Okay. Anything else? I'm sorry? Anything else? No. All right. Okay. Where are you going? Caesar may do with one Rubicon. You have to have four. I'm sorry. Pardon? I said Caesar only had one Rubicon. You have four. Yes, I do have four. Briefly, the EPA, the letter to the EPA, involved a seizure of bikes in March, this is the letter, March 8, 2005, because they were represented to be less than 50 cc's in size and therefore didn't require certification. They were larger, and the certification wasn't present with them. That was all remedied. That was taken care of. In other words, what that letter was about had nothing to do with what plaintiff later discovered was the fraud on the FDA. I do a lot of drug pharmaceutical cases. Fraud on the EPA by representing that their bikes had been tested when they had not been. So it was just simply a totally different issue that was, in fact, remedied. That was not the problem that they later discovered, that the certifications themselves were fraudulently obtained because of the lack of testing. The statute of limitations for RICO is four years. If you start back four years from July 2009 in Rubicon 2, you get to summer of 2005 before the first case, before the first lawsuit was filed. And the suggestion of the court, of the trial court, was that we should have discovered that fraud upon the FDA before filing the lawsuit, but we didn't get it until we got all the documents. That's the problem. So we didn't discover the basis for a RICO claim. Baker v. Foy has just those facts are very distinguishable. Yes, it was service on a co-defendant mother, but the co-defendant mother at her residence, but the co-defendant mother wasn't in the kind of relationship with her son that Zong Shen Inc. was for the Chinese corporations. They weren't a designated agent. She wasn't a designated agent for NHTSA purposes. She was not wholly owned by her son, or 95 percent owned by the Chinese corporations, 5 percent by the wife. So it was not the same kind of relationship, and I'd point the Court to the Schlunk case, which talks about involuntary agents in this corporate context. If the Court has other questions, I'd be happy to address them. Thank you. Thank you. All right. This matter is submitted. And that concludes. Well, we have one more, ma'am. Kenne, Lynn McCormack v. Heidemann.
judges: Walter, Fletcher, Pregerson